# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **JOHN E. HOEFERT, an individual, on behalf of himself and all others similarly situated,** | § § § § | |
| **Plaintiff,** | § § § | |
| **v.** | § § | **Civil Action No. 4:18-cv-00466-P** |
| **AMERICAN AIRLINES, INC.,** | § § § | |
| **Defendant.** | § § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Plaintiff John E. Hoefert's Motion for Class Certification (ECF No. 70), Defendant American Airlines, Inc.'s ("American") Response (ECF No. 81), and Hoefert's Reply (ECF No. 83). Also before the Court is Hoefert's Motion for Partial Summary Judgment (ECF No. 112), American's Response and Objection (ECF No. 117), and Hoefert's Reply (ECF No. 121). In addition, before the Court is American's Motion for Summary Judgment (ECF No. 115), Hoefert's Response (ECF No. 119), and American's Reply (ECF No. 122).

Having considered the Motion for Class Certification as well as the Motions for Summary Judgment, related briefing, the parties' Joint Stipulation (ECF No. 110), and applicable law, the Court finds that American's Motion for Summary Judgment (ECF No. 115) should be and is hereby **GRANTED**, Hoefert's Motion for Partial Summary

Judgment (ECF No. 112) should be and is hereby **DENIED**, and Hoefert's Motion for Class Certification (ECF No. 70) is **DENIED as moot**.

## FACTUAL BACKGROUND

### A.  Undisputed/Stipulated Facts

American, an international air carrier, is a Delaware corporation with its principal place of business in Texas. FAC at ¶ 10, ECF No. 94; Answer at ¶ 10, ECF No. 95; Jt. Stipulation at ¶ 1, ECF No. 110.

In September 2005, US Airways, Inc. merged with America West Airlines, Inc.  Jt. Stipulation at ¶ 4. After the merger, employees of each airline became employees of US Airways, Inc. *Id.* On December 9, 2013, US Airways merged with American.  American's MSJ Br. at 3, ECF No. 115. After the merger, employees who began their employment with America West and continued with US Airways became employees of American. Likewise, employees who were employed by US Airways before its merger with America West became employees of American. FAC at ¶ 7. Throughout this Order, the Court refers to pilots employed by American who were previously employed by America West before it merged with US Airways as "LUS West Pilots"; pilots employed by American who were previously employed by US Airways before it merged with American, except for LUS West Pilots, as "LUS East Pilots"; and pilots employed by American and previously

employed by American before it merged with US Airways as "LAA Pilots." Jt. Stipulation at ¶ 5.[1] The Court has created the following visual aid to depict this sequence of events:



Hoefert is currently a pilot for American and member of the United States Army Reserve. *See* Jt. Stipulation at ¶¶ 6–7, ECF No. 110. Accordingly, Hoefert takes absences to fulfill his Army Reserve obligations, and from July 12, 2012, through February 13, 2015, Hoefert was on such military leave. *Id.* at ¶¶ 8–9. This leave period will be referred to herein as the "Relevant Time Period."

During the Relevant Time Period,

- Hoefert accrued sick leave for the first 31 days and for the month of February 2015, and he did not accrue sick leave from August 2012 through January 2015. *Id.*;

- Hoefert accrued vacation leave for the period of July 12, 2013 through December 31, 2013 and for the month of February 2015. *Id.* Hoefert did not accrue vacation leave from January 1, 2014 through January 31, 2015. *Id.*; and

- Hoefert received monthly operations-based bonus payments from May, June, and July 2012, and he did not receive any monthly operations-based bonus payments from August 2012 through January 2015. *Id.*

---

[1]Hoefert is considered an LUS West Pilot because he was employed by America West before it merged with US Airways and by US Airways before it merged with American. FAC at ¶ 5.

From July 2012 through December 2018, approximately 1,623 American pilots (including LAA, LUS West, and LUS East Pilots) took military leave. American's MSJ App'x at 15, ECF No. 116-1; Jt. Stipulation at ¶ 9 (stating that "[a]t this time, there is no disagreement between the parties regarding the military absence dates or the military absences taken by American pilots (including LAA Pilots, LUS West Pilots, and LUS East Pilots").

### 1. Sick-Time Accrual Rates

From July 2012 through December 2013, LUS East Pilots accrued sick time at a rate of five hours and thirty minutes for each "month of employment as a pilot with the Company." ECF No. 110 at ¶ 10. This is set forth in Section 14 of the collective bargaining agreement ("CBA") between US Airways and LUS East Pilots who were represented by the US Airline Pilots Association ("USAPA"). *Id.*

From July 2012 through December 2013, LUS West Pilots accrued sick time as set forth in Section 14 of the CBA between America West and LUS West Pilots who were represented by the Air Line Pilots Association, International ("ALPA"), which provides, in part, as follows:

> If a Pilot's sick bank is 0:00-154:00 at the end of the bid period, then the Pilot shall accrue sick leave credit at the rate of five hours and thirty minutes (5:30) per bid period of Active Service (except as provided in Section 13) following each bid period in which the Pilot did not call in sick, and four hours (4:00) per bid period of Active Service (except as provided in Section 13) following each bid period in which the Pilot did call in Sick.
>
> If a Pilot's sick bank is 154:01-500:00 at the end of the bid period, then the Pilot shall accrue sick leave credit at the rate of four (4:00) hours per bid period of Active Service (except as provided in Section 13) following each bid period in which the Pilot did not call in sick, and two hours and

thirty minutes (2:30) per bid period of Active Service (except as provided in Section 13) following each bid period in which the Pilot did not call in sick.

*Id.* at ¶ 11.

From January 1, 2014 to the present, LAA Pilots, LUS West Pilots, and LUS East Pilots have accrued sick time at the rate of five hours for each "month of service," a term defined in Section 10 of the applicable CBAs as any month in which the pilot has 15 days or more "of service." *Id.* at ¶ 12.

2.    Vacation Accrual Rates

From January 1, 2014 to present, LAA Pilots, LUS West Pilots, and LUS East Pilots accrued vacation at the following rates:

| Accredited Service As of December 31 | Vacation Entitlement In Succeeding Vacation Year |
|---|---|
| Less than 1 year | prorated in b. below |
| 1 through 5 years | 21 days |
| 6 years | 22 days |
| 7 years | 23 days |
| 8 years | 24 days |
| 9 years | 25 days |
| 10 years | 26 days |
| 11 years | 27 days |
| 12 years | 28 days |
| 13 years | 29 days |
| 14 years | 30 days |
| 15 years and thereafter | 31 days |

b.  A pilot who, as of December 31 of any Year, has had less than one (1) year of accredited service with the Company will be entitled to a vacation on the basis of one and three quarters (1-3/4[ths]) days for each month of service.

*Id.* at ¶ 13. These rates were set forth in Section 9 of the 2013 American MTA, 2013 US Airway MTA, January 2015 JCBA, and JCBA ("applicable CBAs"). *Id.* The applicable CBAs provide that "[v]acation days due shall be converted to vacation hours at the rate of 3 hours and 40 minutes (3:40) per vacation day." *Id.*

5

3.    Operations-Based Bonus Payments

Monthly operations-based bonus payments were earned and paid from July 2012

through December 2018 as follows:

| YEAR | MONTH | BONUS $ | Check Date[2] |
|---|---|---|---|
| 2012 | JULY | 50 | 9/28/12 |
| 2012 | SEPT | 50 | 11/30/12 |
| 2012 | NOV | 50 | 1/30/13 |
| 2013 | JAN | 50 | 3/29/13 |
| 2013 | FEB | 50 | 4/30/13 |
| 2013 | MAR | 50 | 5/31/13 |
| 2013 | MAY | 50 | 7/31/13 |
| 2013 | SEP | 50 | 12/30/13 |
| 2013 | NOV | 50 | 1/30/14 |
| 2013 | DEC | 50 | 2/28/14 |
| 2014 | JAN | 100 | 3/28/14 |
| 2014 | APR | 50 | 6/30/14 |
| 2014 | SEP | 50 | 11/28/14 |
| 2015 | SEP | 50 | 11/30/15 |
| 2015 | OCT | 50 | 12/30/15 |
| 2015 | NOV | 50 | 1/29/16 |
| 2016 | FEB | 50 | 4/29/16 |
| 2016 | APR | 50 | 6/30/16 |
| 2016 | OCT | 50 | 12/30/16 |
| 2016 | NOV | 50 | 1/30/17 |
| 2017 | JAN | 50 | 3/30/17 |
| 2017 | FEB | 50 | 4/28/17 |
| 2017 | APR | 50 | 6/30/17 |
| 2017 | MAY | 50 | 7/28/17 |
| 2017 | SEP | 50 | 12/5/17 |
| 2017 | OCT | 50 | 12/29/17 |
| 2017 | NOV | 50 | 1/30/18 |
| 2018 | JAN | 50 | 5/30/18 |

---

[2] Check dates are approximate and may have varied depending on when a pilot's payroll was processed.

*Id.* at ¶ 15. American's Managing Director of Labor Relations, Flight, testified in his Amended Declaration that from July 1, 2012 through the present, LAA Pilots, LUS West Pilots, and LUS East Pilots qualified for bonus payments only if they "worked at least one hour in the month in which the bonus was earned and . . . were on active or eligible inactive status at the time the bonus was paid out." American's MSJ App'x at 10 at ¶ 21, ECF No. 116-1.

## B.    American's "*Woodall* Policy"

In 2006, the United States Department of Justice ("DOJ") filed suit against American on behalf of American pilots who had taken military leave since 2001. *See Woodall v. American Airlines, Inc.*, No. 3:06-cv-00072-M (N.D. Tex. Jan. 16, 2007).[2] The primary issue in *Woodall* concerned whether American had treated pilots who had taken military leave less favorably—specifically, with respect to sick leave and vacation leave accrual—than pilots who had taken leave for comparable types of non-military leave such as for jury duty, vacation, union service, and sickness. *See generally* No. 3:06-cv-00072-M, Second Amended Complaint, ECF No. 25. In 2008, American and the DOJ reached a proposed class settlement in which American agreed to treat any pilot absent for military service for 16 days or less as though the pilot had not been absent. *Id.* at ECF No. 46. Several of the class members objected to the proposed class settlement on the ground that

---

[2]The Court takes judicial notice of the filings in *Woodall v. American Airlines, Inc.*, No. 3:06-00072-M (N.D. Tex.). *See* Fed. R. Evid. 201; *Buckley v. Cockrell*, 45 F. App'x 320 (5th Cir. 2002) ("It is permissible for a court to take judicial notice of its own records . . . .") (internal quotation marks omitted).

the 16-day "breakpoint" was too short. *Id.* at ECF No. 68. On August 1, 2008, District Judge Barbara M.G. Lynn—now Chief District Judge—overruled the objections and approved the settlement. *Id.* at ECF No. 74 at 8.

American asserts that to date, it has applied the *Woodall* settlement agreement in a manner "more generous" than required by the terms of the settlement agreement "by treating pilots on military absences of 16 days or fewer in one month as if they worked the entire absence for sick and vacation accrual purposes." American's MSJ Br. at 8. American further asserts that although it was only required to comply with the *Woodall* settlement agreement for three years, it has voluntarily chosen to continue to comply to the present and that since 2017, American has applied the *Woodall* policy to LUS West and LUS East pilots in the same manner it has applied the policy to LAA pilots. *Id.* at 9.[3]

## PROCEDURAL BACKGROUND

On September 1, 2017, Hoefert, as an individual, on behalf of himself and all others similarly situated, filed the instant lawsuit against American in the District Court of Arizona. ECF No. 1. Hoefert alleged that American violated two provisions of the Uniformed Services Employment and Reemployment Rights Act ("USERRA") by failing

---

[3]In the "Introduction" section of his Response to American's Motion for Summary Judgment, Hoefert takes exception with American's purported reliance on the *Woodall* settlement agreement and policy because the case involved different parties, is not binding law, and has no precedential value. *See* MSJ Br. in Resp. at 1–2, ECF No. 119. And while Hoefert asserts that pursuant to Federal Rule of Evidence 408, prior settlement agreements cannot be used as evidence in a proceeding, he does not clearly object to the *Woodall* settlement agreement. Regardless, the Court includes this discussion of *Woodall* simply for the sake of completeness and context. That is, although the Court agrees with Hoefert that the *Woodall* settlement agreement is neither binding nor precedential, it informed American's policies during the Relevant Time Period, and thus is relevant to the Court's background discussion.

to provide Hoefert and other pilots on military absences with the most favorable sick-time accrual, vacation-time accrual, and operations-based bonus payments. *See id.*; 38 U.S.C. § 4316(a), (b). American filed a motion to transfer, and on June 7, 2018, the case was transferred to the Court. *See* ECF Nos. 38–39. Hoefert eventually filed a First Amended Complaint ("FAC"), which is Hoefert's live pleading. ECF No. 94.

On October 10, 2018, Hoefert filed a Motion for Class Certification in which he sought to certify the following four classes: (1) Bonus Class; (2) US Airways, Inc. Sick Time Accrual Class; (3) Post-Merger Sick Time Accrual Class; and (4) Post-Merger Vacation Time Accrual Class. ECF No. 69; ECF No. 102 at 1–2. After a conference with the parties' counsel, the Court ordered (1) Hoefert to file a document identifying each type of leave he alleged was comparable to military leave, (2) the parties to file a stipulation as to certain matters, and (3) for each party to file a motion for summary judgment. *See* ECF No. 105. Accordingly, on May 16, 2019, Hoefert filed a response identifying the following five types of absences he alleges are comparable to absences for military leave: (1) sick leave; (2) Duty with the Association; (3) jury duty; (4) vacation; and (5) FMLA leave. ECF No. 107. Then on July 16, 2019, the parties filed a Joint Stipulation addressing military absences, sick-time accrual rates, vacation accrual rates, and monthly operations-based bonus payments. ECF No. 110.[4]

---

[4]The case was transferred from the Honorable John McBryde to the undersigned on August 8, 2019. *See* ECF No. 111.

On August 15, 2019, Hoefert filed a motion for partial summary judgment (ECF No. 112) and American filed a motion for summary judgment (ECF No. 115). The parties have filed responses and replies and American has filed supplemental authority to which Hoefert filed a response and objection.[5] *See* ECF Nos. 117–122, 124–25. The Motion for Class Certification, American's Motion for Summary Judgment, and Hoefert's Motion for Partial Summary Judgment are ripe for the Court's consideration.

## APPLICABLE LAW

### A.    FED. R. CIV. P. 56

The Court may grant summary judgment where the pleadings and evidence show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute as to any material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The movant must inform the court of the basis of its motion and demonstrate from the record that no genuine dispute as to any material fact exists. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When reviewing the evidence on a motion for summary judgment, courts must resolve all reasonable doubts and draw all reasonable inferences in the light most favorable to the non-movant. *See Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988). The court cannot make a credibility determination in light of conflicting evidence or

---

[5]Having considered American's supplemental authority and Hoefert's response and objection, the Court **OVERRULES** Hoefert's objection.

competing inferences. *Anderson*, 477 U.S. at 255. If there appears to be some support for disputed allegations, such that "reasonable minds could differ as to the import of the evidence," the court must deny the motion. *Id.* at 250.

"On cross-motions for summary judgment, the court "review[s] each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Target Constr., Inc. v. Baker Pile Driving & Site Work, LLC*, No. 12-01820, 2013 WL 4721369, at *2 (E.D. La. Sept. 3, 2013) (citing *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001)).

**B.     The Propriety of Resolving a Motion for Summary Judgment Before Resolving a Motion for Class Certification**

Federal Rule of Civil Procedure 23 provides that "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." FED. R. CIV. P. 23(b)(1)(A). "As a general matter, however, Rule 23 permits a district court, in appropriate circumstances, to defer the issue of class certification until after disposing of summary judgment motions." *Danny B. ex rel. Elliott v. Raimondo*, 784 F.3d 825, 837–38 (1st Cir. 2015). Indeed, the United States District Court for the Southern District of Texas has taken this approach and resolved a motion for summary judgment before deciding a motion for class certification. *See, e.g.*, *Hoge v. Parkway Chevrolet, Inc.*, No. CIV.A. H-05-2686, 2007 WL 3125298, at *16 (S.D. Tex. Oct. 23, 2007) (Rosenthal, J.) ("A suit pleaded as a class action may be resolved by deciding a motion to dismiss or for summary judgment, even before class certification is decided."). The effect of a district court's resolution of a dispositive motion while a motion

for class certification is pending may cause the motion for class certification to become moot. *See id.* ("Because Parkway's summary judgment motion that the mailing Hoge received does not violate the FCRA is granted, Hoge's motion for class certification under Rule 23(b)(3) is moot.").

Because the resolution of the Motions for Summary Judgment may render the Motion for Class Certification moot, the Court first addresses the Motions for Summary Judgment.

## ANALYSIS

Hoefert asserts that American violated Section 4316(a) of USERRA by not providing Hoefert with the following benefits while he was on military leave that Hoefert contends are seniority-based benefits: sick-time accrual, vacation accrual, and monthly operations-based bonuses. FAC at ¶¶ 61–63, 73–75, 83–85. Hoefert alternatively asserts that if these same benefits are not seniority-based, American violated Section 4316(b) of USERRA by not providing Hoefert with sick accrual, vacation accrual, and monthly operations-based bonuses while on military leave, when American did provide such benefits to pilots on comparable leaves of absences. *Id.* at ¶¶ 64–68, 76–79, 86–88. According to Hoeffert, these comparable leaves of absence are for jury duty, union service ("Duty with Association"), sickness, Family Medical Leave Act ("FMLA") absence, and vacation. *See* ECF No. 107.

American disagrees and argues that the undisputed facts as provided in the Joint Stipulation, applicable CBAs, and summary judgment record establish the "non-seniority" nature of the pilots' sick and vacation-time accrual and operations-based bonus payments.

ECF No. 113 at 16–17; ECF No. 119 at 11–12, 15, 19; ECF No. 122. American further argues that the employees absent for alleged comparable leaves of absence are not treated more favorably than those who are absent for military leave and that in any event, the other leaves of absence are not comparable. American's MSJ Br. at 21–31, ECF No. 115.

## A.  USERRA

"Enacted in 1994, USERRA is the latest in a series of veterans' employment rights laws . . . ." *Crews v. City of Mt. Vernon*, 567 F.3d 860, 864 (7th Cir. 2009).[6] USERRA has three express purposes:   (1) to encourage noncareer service in the uniformed services by reducing employment disadvantages; (2) to minimize the disruption to the lives of persons performing military service, their employers and others by providing for the prompt reemployment of such person upon their completion of such service; and (3) to prohibit discrimination against persons because of their service in the uniformed services. 38 U.S.C. § 4301(a); *Bradberry v. Jefferson Cty., Tex.*, 732 F.3d 540, 544–45 (5th Cir. 2013). To those ends, USERRA provides in relevant part that "[a] person who . . . has an obligation to perform service in a uniformed service shall not be denied . . . any benefit of employment

---

[6]Courts have universally acknowledged the propriety of relying on cases analyzing predecessor statutes, such as the Military Selective Service Act of 1967 and the Veterans' Reemployment Rights Act (VRRA), when considering claims under the USERRA. *See e.g.*, *Serricchio v. Wachovia Sec. LLC*, 658 F.3d 169, 174 (2d Cir. 2011) ("In enacting USERRA, Congress made clear that the statute should be thought of as an extension of existing law—not an entirely new piece of legislation supplanting the body of case law that had developed around veterans' rights."); *Rogers v. City of San Antonio*, 392 F.3d 758, 762 (5th Cir. 2004) (same). Indeed, one of USERRA's implementing regulations states, "In enacting USERRA, Congress emphasized USERRA's continuity with the VRRA and its intent to clarify and strengthen the law. Congress also emphasized that Federal laws protecting veterans' employment and reemployment rights for the past fifty years has been successful and that the large body of case law that has developed under those statutes remained in full force and effect, to the extent it is consistent with the USERRA." 20 C.F.R. § 1002.2.

by an employer on the basis of that . . . performance of service . . . or obligation." 38 U.S.C.
§ 4311(a). The Supreme Court has explained that such statutory reemployment protections
for service members are "to be liberally construed for the benefit of those who left private
life to serve their country . . . ." *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S.
275, 285 (1946).

However, while the USERRA was intended to benefit and protect service members,
it was not intended to provide service member employees with more favorable treatment
than non-service member employees. Indeed, the Court of Appeals for the Federal Circuit
clarified that USERRA requires that "service member employees receive benefits equal to,
but not more favorable than, those generally available to all employees of the employer."
*Tully v. Dep't of Justice*, 481 F.3d 1367, 1369 (Fed. Cir. 2007); *see also Waltermyer v.
Aluminum Co. of Am.*, 804 F.2d 821, 825 (3d Cir. 1986) ("[W]e are conscious that the
[servicemember] plaintiff's rights must equal, and not exceed those of employees covered
by the collective bargaining agreement.").

## B.    Seniority-Based Benefits Under 38 U.S.C. § 4316(a)

American first seeks summary judgment on Hoefert's claims under 38 U.S.C.
§ 4316(a) because it contends that all of the benefits at issue—sick and vacation-time
accrual and operations-based bonuses—are non-seniority benefits and thus not protected
by Section 4316(a). American's MSJ Br. at 15. Hoefert responds that all of the benefits are
conditioned, not on an actual work requirement, but merely on the passage of time he
remains employed, so the benefits are seniority-based to which Hoefert is entitled even
when absent for military service. Hoefert's MSJ Resp. at 10–11, ECF No. 119. American

rejoins that such a reading is untethered from the undisputed facts. American's Reply at 11, ECF No. 112.

With respect to the benefits of persons absent from employment to perform uniformed (military) service, Section 4316(a), which addresses seniority-based benefits, states as follows:

> A person who is reemployed under this chapter is entitled to the seniority and other rights and benefits determined by seniority that the person had on the date of the commencement of service in the uniformed services plus the additional seniority and rights and benefits that such person would have attained if the person had remained continuously employed.

38 U.S.C. § 4316(a); *see also DeLee v. City of Plymouth*, 773 F.3d 172, 175 (7th Cir. 2014) (citing Section 4316(a) for the proposition that one returning from military leave is entitled to the "seniority-based benefits that they would have attained had they remained continuously employed"). Therefore, to succeed on a claim under Section 4316(a), Hoefert must establish that the benefits withheld are seniority-based benefits, while American may be entitled to summary judgment on this claim if it can establish that the benefits at issue are non-seniority-based benefits.

Applicable regulations provide three factors for courts to analyze when determining whether a benefit is seniority-based. *First*, it must be determined whether the benefit is a reward for length of service rather than a form of short-term compensation for work performed. *See* 20 C.F.R. § 1002.212(a). The Supreme Court has explained that a benefit is considered a "seniority-based benefit" when "the nature of the benefit [is] a reward for length of service, rather than a form of short-term compensation for services rendered." *Coffy v. Republic Steel Corp.*, 447 U.S. 191, 197–98 (1980); *see also Aiello v. Detroit Free*

*Press, Inc.*, 570 F.2d 145, 148 (6th Cir. 1978) (addressing a related predecessor statute and explaining that the veteran returning from military absence "is not entitled to benefits which require more than continued status, such as a work requirement demanding actual performance on the job").[7] *Second*, the Court considers whether it is reasonably certain that

---

[7]In analyzing *Coffy*, the United States District Court for the Northern District of Illinois has helpfully elucidated the challenge for courts in attempting to distinguish between benefits for "length of service" versus benefits for "services rendered":

> The Supreme Court has recognized that the problem with this standard is that "even the most traditional kinds of seniority privileges could be as easily tied to a work requirement as to the more usual criterion of time as an employee." *Coffy*, 447 U.S. at 203. In other words, there is no objective difference between a "work requirement" (or "compensation for services rendered") and "time as an employee" (or "length of service"), because *employees spend their time working*. The work accomplished and the time spent accomplishing it are two sides of the same job-coin. True, length of service—or seniority—is generally measured in years, whereas employees are often compensated for services rendered by the hour. But both involve providing a benefit (whether money, vacation time, etc.) per unit of time worked. The inherent tie between time and work means that even rewards for length of service over months or years can be framed as compensation for services rendered. *See Alabama Power Co. v. Davis*, 431 U.S. 581, 592–93 (1977) ("It is obvious that pension payments have some resemblance to compensation for work performed . . . . The same observations, however, can be made about any benefit and therefore are of little assistance in determining whether a particular benefit recompenses labor or rewards longevity with an employer.").

> Since all benefits can be described with reference to a certain period of time worked, "the particular formula" by which "benefits [are] calculated," i.e., the length of the period of time worked necessary to receive any given benefit, is not the "crucial factor" in determining whether the benefit is seniority-based for purposes of the Act. *See Alabama Power*, 431 U.S. at 592, and *Coffy*, 447 U.S. at 203. Rather, it is the "real nature" of the benefit that is key to determining whether a benefit is a "reward for length of service" or "compensation for services rendered." *Alabama Power*, 431 U.S. at 588–89.

> By "real nature" the Supreme Court appears to mean whether the benefit is a future-oriented longevity incentive, or backward-looking compensation for work already performed. The Supreme Court has held that benefits like pensions, severance pay, or unemployment pay are seniority-based because they concern an exchange of financial security for an employee's long-term commitment to an employer, i.e., accrual of seniority. *See Accardi v. Penn. R. Co.*, 383 U.S. 225, 230

the employee would have received the benefit if he had remained continuously employed during the period of service. 20 C.F.R. § 1002.212(b). *Third*, the Court considers whether it is the employer's actual custom or practice to provide or withhold the benefit as a reward for length of service. *Id.* § 1002.212(c).

### 1. Sick-Time Accrual is Not a Seniority-Based Benefit

Hoefert contends that sick-time accrual is a seniority-based benefit because it accrues under the CBAs merely based on "service," and Hoefert interprets "service" as used in the CBAs as "similar to 'employment' rather than to 'actual work' . . . ." Hoefert's

---

(1966) ("[The] use of the label 'compensated service' cannot obscure the fact that the real nature of these payments was compensation for loss of jobs. And the cost to an employee of losing his job is not measured by how much *work he did in the past*—no matter how calculated—but by the rights and benefits he forfeits by giving up his job.") (emphasis added); *Alabama Power*, 431 U.S. at 593–94 (pension credit was held to be seniority-based because a period of years is required for a pension to vest and the purpose of a pension is to assure financial security of long-time employees in retirement); *Coffy,* 447 U.S. at 205 ("[T]he purpose and function of the [weekly supplemental unemployment benefits] is to provide economic security during periods of layoff to employees who have been in the service of the employer for a significant period."); *see also DeLee*, 773 F.3d at 173 (holding that an annual bonus that could be prorated monthly was a seniority-based benefit, because the express purpose of the bonus was to be "an incentive for police and firemen to remain in the service of the City").

By contrast, the Supreme Court has held that vacation days accrued hourly were not seniority-based, because a holding to the contrary would be "sharply inconsistent with the common conception of a vacation as a reward for and respite from a lengthy period of labor." *Foster v. Dravo Corp.*, 420 U.S. 92, 101 (1975). In other words, unlike the pensions, severance pay, or unemployment pay addressed in *Accardi*, *Alabama Power*, and *Coffy*, vacation days do not incentivize longevity of employment, but rather compensate for (or in the Supreme Court's words, provide a "respite from") the effort an employee has expended in the past. This reasoning is reflected in the federal regulations implementing the Act. *See* 20 C.F.R. § 1002.150 ("As a general matter, accrual of vacation leave is considered to be a non-seniority benefit[.]").

*Moss v. United Airlines, Inc.*, No. 16 C 8496, 2019 WL 5892571, at *2–3 (N.D. Ill. Nov. 12, 2019).

MSJ Resp. at 12. American contends that sick-time accrual is non-seniority based because under the applicable CBAs, sick time is a form of short-term compensation for services rendered. American's MSJ at 18, ECF No. 115. American argues that because the CBAs require 15 days or more "of service" in a month in order to accrue sick time and because "service" under the CBAs means that a pilot has worked or been available to work—as opposed to simply having been employed—for at least 15 days in the month, that the undisputed facts establish that it is a seniority-based benefit. American's MSJ Reply at 4, ECF No. 122. American supports its reading of "service" as differentiated from "employment" because other parts of the applicable CBAs establish that pilots do not accrue sick leave during other periods of employment absent service (such as FMLA, paid and unpaid sick absences, and "off-payroll union service absences"). *Id.* at 4–5.

The Court agrees with American. The applicable CBAs provide that pilots' sick accrual is tied to time working or being available to work rather than simply being employed. That is, "month of service"—defined as fifteen days of "service" in a month— is required in order for Hoefert to obtain sick accrual. *See* Jt. Stipulation at ¶ 12; American's MSJ App'x at 29–31, ECF No. 116-1. Contrary to Hoefert's contention that this requires reading additional terms into the CBAs, it is Hoefert's reading—having to substitute "employment" for "service"—that seeks to rewrite the CBAs. Accordingly, based on the language of the applicable CBAs, the real nature of the sick-time accrual at issue is for actual work performed rather than a reward for length of service. *See LiPani v. Bohack*, 546 F.2d 487, 490–91 (2d Cir. 1976) (affirming summary judgment for sick leave benefits

that court found were a form of deferred compensation because the benefits were prorated and did not increase with seniority).

Therefore, the Court finds that sick-time accrual is not a seniority-based benefit and thus is not protected under section 4316(a).

2. Vacation-Time Accrual is Not a Seniority-Based Benefit

Hoefert contends that summary judgment is inappropriate because vacation-time accrual is a seniority-based benefit that contains no work requirement or actual performance on the job necessary to obtain the benefit. Hoefert's MSJ Resp. at 14; *see Aiello*, 570 F.2d at 150 (stating that a "work requirement demanded actual performance on the job"). Thus, Hoefert contends that American's vacation-accrual benefit should be considered a seniority-based benefit because "it accrues solely with the passage of time." Partial MSJ at 17, ECF No. 113. American attempts to distinguish Hoefert's caselaw by arguing that those cases still correlated benefits to the amount of work actually performed by the employee. American's MSJ Reply at 7. According to American, Hoefert—like all other American pilots—accrues vacation under the applicable CBAs on a prorated basis for specified absences during which the pilot is not able to actually perform services. *Id.* at 8.

The weight of authority establishes that vacation time accrued is usually not a seniority-based benefit that is protected under Section 4316(a). *First*, the federal regulation implementing the USERRA plainly states that "[a]s a general matter, accrual of vacation leave is considered to be a non-seniority benefit[.]" 20 C.F.R. § 1002.150. Thus, although vacation leave is not a non-seniority benefit *per se*, it is generally the case. *See id. Second*,

in *Foster v. Dravo Corp.*, the Supreme Court held that vacation days accruing hourly are not seniority-based but rather are a reward for and respite from a lengthy period of labor. 420 U.S. at 99–101; *see also Austin v. Sears, Roebuck & Co.*, 504 F.2d 1033, 1037 (9th Cir. 1974) (recognizing in the context of a USERRA predecessor statute that "[a] paid vacation is fairly understood as part of a worker's short-term return from labor"). Indeed, in *Foster*, the Supreme Court explained that considering vacation accrual as a non-seniority benefit is "so sharply inconsistent with the common conception of a vacation as a reward for and respite from a lengthy period of labor that the statute should be applied *only where it clearly appears that vacations were intended to accrue automatically as a function of continued association with the company*." *Foster*, 420 U.S. at 101 (emphasis added). Under the applicable CBAs, it is not clear that vacations accrue automatically solely with the passage of time. *Third*, the CBAs at issue provide vacation accrual based on active status— that is being available for service—for at least fifteen days rather than mere employment for at least fifteen days. *See id.* at 101 (explaining that vacation accrual should be considered a seniority-based benefit "only where it clearly appears that vacations were intended to accrue automatically as a function of continued association with the company"); American's MSJ App'x at 20–21.

Here, the disputed vacation days accrue not to incentivize long-term employment, but rather to compensate and provide a respite from American's pilots' past efforts. *See Austin*, 504 F.2d at 1037 ("A paid vacation is fairly understood as part of a worker's short-term return for labor; hence, treating vacation time earned as a function of actual labor performed is not unreasonable."). Indeed, Section 9 of the applicable CBAs provides that

full vacation leave accrues over a calendar year if a pilot has twelve months of active service,[8] while prorated vacation leave accrues if the pilot works fewer than twelve months of active service. When considered on a monthly basis, full vacation leave accrues each month an employee is active at least fifteen days. *See* American's MSJ App'x at 19–22, ECF No. 116-1. Therefore, vacation-time accrual is tied to an actual work requirement and thus the Court finds that it is a non-seniority-based benefit and not protected under Section 4316(a). *See Moss*, 2019 WL 5892571, at *3 (granting summary judgment on Section 4316(a) claim and holding that vacation time is not a seniority-based benefit because the applicable CBA's "focus on compensation for work completed in the past shows that the 'real nature' of vacation days in this case is not a reward for length of service"); *LiPani*, 546 F.2d at 490.

### 3. Bonus Payments are Not a Seniority-Based Benefit

American seeks summary judgment on Hoefert's claim for operations-based bonus payments. American's MSJ at 19–20, ECF No. 115. These operations-based bonus payments are part of American's monthly program whereby employees are eligible to receive a $50 bonus payment if the airline achieves a first-place ranking in certain United States Department of Transportation metrics such as on-time arrivals and baggage performance. *See* American's MSJ App'x at 31–32. Thus, the bonus payments are "intended to incentivize employee performance to help American achieve its objectives each month." American's MSJ App'x at 32. Hoefert claims that the undisputed material

---

[8]American considers a month of "active service" as one in which the pilot works at least fifteen days in the month. *See* American's MSJ App'x at 19–21, ECF No. 116-1.

facts show that the qualification for receiving bonus payments is if a pilot is "actively employed or on eligible leave of absence," and if the employee's pay hours are "greater than zero" during the bonus month. Hoefert's Partial MSJ at 19, ECF No. 113. Therefore, Hoefert argues that it is reasonably certain that had he not been absent for military service, he would have been paid the bonus and that American's actual practice is to provide bonus payments based on length of service rather than performance of the individual employee. *Id.* at 19–20.

The Court finds that the bonus payments are non-seniority-based benefits because they are tied to actually performing services on behalf of American. Borrowing the language of the Supreme Court, the operations-based bonus payments are "a bona fide effort to compensate for work actually performed." *Foster*, 420 U.S. at 99. To read the operations-based bonus payments—that is, payments for meeting certain operational benchmarks—as anything other than compensation for work actually performed, is to ignore the real nature of the benefit. *See Accardi*, 383 U.S. at 330. Indeed, the January 23, 2014 letter to American employees, attached to American's summary judgment appendix, describes the monthly bonus program as an "operational incentive program." *See* MSJ App'x at 31–32, 415, ECF Nos. 116-1, 116-2. This language clearly connects or is at least a bona fide effort to connect the bonus payments to actual performance. *See Foster*, 420 U.S. at 99. Thus, the Court concludes that the operations-based bonus payments are non-seniority-based benefits, which are not protected by Section 4316(a).

Having concluded that the three benefits that Hoefert claims were withheld in violation of 38 U.S.C. § 4316(a) are non-seniority benefits and thus are not protected by Section 4316(a), the Court **GRANTS** summary judgment on this claim.

**C.     Other Benefits Under 38 U.S.C. § 4316(b)**

Section 4316(b) requires that the plaintiff establish that the benefits withheld are provided to employees having similar seniority, status, and pay who are on furlough or authorized leave of absence that is comparable to military leave. *See* 38 U.S.C. § 4316(b). The statute reads as follows:

> Subject to paragraphs (2) through (6), a person who is absent from a position of employment by reason of service in the uniformed services shall be --
>
> > **(A)** deemed to be on furlough or leave of absence while performing such service; and
> >
> > **(B)** entitled to such other rights and benefits not determined by seniority as are generally provided by the employer of the person to employees having similar seniority, status, and pay who are on furlough or leave of absence under a contract, agreement, policy, practice, or plan in effect at the commencement of such service or established while such person performs such service

*Id.*

One of the implementing regulations addressing non-seniority benefits explains that "[i]f the non-seniority benefits to which employees on furlough or leave of absence are entitled vary according to the type of leave, the employee [on military leave] must be given the most favorable treatment accorded to any comparable form of leave . . . ." 20 C.F.R. § 1002.150(b). The regulation further states that "[i]n order to determine whether any two types of leave are comparable, the duration of the leave may be the most significant factor

to compare." *Id.* "In addition to comparing the duration of the absences, other factors such as the purpose of the leave and the ability of the employee to choose when to take the leave should also be considered." *Id.* Thus, to determine whether the five forms of leave are comparable, the Court considers (1) the duration of leave, (2) the purpose of leave, and (3) the ability of the employee to choose when to take the leave. *See id.*

American asserts in its Motion for Summary Judgment that the undisputed facts establish that the "comparable" non-military absences are not actually "comparable" as absences protected by the USERRA. American's MSJ at 21–31, ECF No. 115. Accordingly, American may be entitled to summary judgment if it can conclusively establish that the other absences are not "comparable" to military absences. *See* 20 C.F.R. § 1002.150.

    1.   <u>Sick Leave</u>

American argues that absences for sickness are not comparable to military absences because choosing to take a sick absence is discretionary (as opposed to becoming ill or injured, which is obviously nondiscretionary), whereas military absences are nondiscretionary and simply must be taken when the military orders the pilot when to report. American's MSJ at 30–31, ECF No. 115. American further argues that these absences are different based on their differing purposes. *Id.* at 31. To demonstrate the differing purposes, American shows that sick leave is an earned employment benefit similar to vacation that a pilot may deduct leave from his bank of sick leave when necessary to use, but American will pay the pilot for accrued sick time that is not used annually. *See, e.g.*, American's MSJ App'x at 369. Finally, under the applicable CBAs, American caps

pilots' total sick time accrued (short-term and long-term) at 1,000 hours. *Id.* at 369–70. American conversely shows that military leave has a different purpose because such absences does not accrue in a bank to be deducted when called upon, and there is no payment for unused, accrued military leave. Finally, there is no cap for military leave. American's MSJ Br. at 31. American also argues that sick absences and military leaves are different in their duration. The average length of military leave is 23.2 days, whereas the average length of sick absence is 6.6 days. *See* American's MSJ App'x at 15, 17.

Hoefert responds that sick absences and military absences are similar in that their duration can be as short as a day or two but they can also last up to thirteen months or longer. Hoefert's MSJ Resp. at 25, ECF No. 119. Hoefert juxtaposes the percentage of military leave over 30 days (4.06%) with the percentage of sick leave over 30 days (2.3%) and concludes that a 1.7% difference indicates that the forms of leave are comparable. *Id.* Hoefert also asserts that sick and military leave are comparable because they each provide employees with time away from work so that they can eventually return to work. *Id.*

The Court agrees with American that sick and military absences are not comparable. First, the purposes are different because military absences are forward looking, whereas sick leave is backward looking. That is, military leave is provided as the need arises going forward—when the pilot is called to service. Sick leave is provided (accrues or is earned) based on past days worked. These different purposes are illustrated by the differences highlighted above—*e.g.*, sick leave bank, payment for unused sick leave, and sick leave capped at 1,000 hours. Moreover, the durations are different. Although Hoefert is correct that from July 2012 through December 2018, the raw percentage difference between

military and sick absences that are longer than 30 days is only 1.7%, the Court notes that the average length of all military leave is 23.2 days, whereas the average length of all sick absence is 6.6 days. The Court finds the difference in average length of absence more convincing than Hoefert's percentage-based argument. American's MSJ App'x at 15, 17, ECF No. 116.

Thus, the Court finds that based on purpose and duration, military absences and sick absences are not comparable, and as such Hoefert is not entitled to benefits on military leave that other pilots may accrue while on sick leave.

### 2. Duty with the Association

Hoefert alleges that he is entitled to the same non-seniority benefits as pilots absent for Duty with the Association. FAC at ¶ 76. According to Hoefert, union service is comparable to military leave because they are both unpaid, both can last up to several years, and the Association's representative requirements means pilots may "not effectively have a choice but to perform Union Service." Hoefert's MSJ Resp. at 27, ECF No. 119. American argues that benefits provided non-military leave for union service is not comparable to military leave, and even if so, the benefits are provided by the union and not American and thus are not protected by the USERRA. American's MSJ Reply, ECF No. 122 at 14–15; American's MSJ App'x at 29. Hoefert acknowledges that the union technically pays for leave benefits and the benefits are administered by American, but he nevertheless argues that the benefits are still protected because they are provided to pilots pursuant to the applicable CBAs. Hoefert's MSJ Resp. at 27.

The operative text of the USERRA plainly states that military service members on leave are entitled to the same benefits "as are generally provided by the employer" to employees for other comparable absences. *See* 38 U.S.C. § 4316(b)(1)(B). Thus, because the benefits allegedly accruing while other pilots are absent for Duty with Association are not actually paid by American and are in fact paid by the union and simply administered by American, any such benefit is not "provided by" American, and thus is not protected by section 4316(b). *See Moss*, 2019 WL 5892571, at *5 (granting summary judgment on section 4316(b) claim because "even if [association leave of absence] is comparable to military leave, Defendants do not generally provide benefits during [association leave of absence] since the benefits are covered by the union.").

But even if the Court concluded otherwise, American would still be entitled to summary judgment because Duty with the Association is not comparable because the absences serve different purposes, which is illustrated by the fact that being a union representative and thus being on leave for such representation is completely **voluntary**, whereas military service can be **compulsory**. American's MSJ App'x at 28. Hoefert's argument that a pilot may not have a choice but to perform union service given the overall group of pilots employed by American amounts is thus unpersuasive. *See* Hoefert's MSJ Resp. at 27, ECF No. 119. Moreover, under the applicable CBAs, only three pilots at a time are permitted absences to participate in full-time union activities. American's MSJ App'x at 379. This participation limitation is intended to permit a small number of pilots to participate in labor/management relations without dramatically interrupting American's operations. *See e.g.*, *id.* at 165. The applicable CBAs place no such limitation on the

number of American pilots that may be simultaneously on military absences and the purpose of any such American policy regarding military absences is solely to benefit and protect the servicemembers and not American.

Therefore, Hoefert is not entitled to benefits that may accrue to other pilots on leave for Duty with the Association when he is on military leave.

3.    Jury Duty

American asserts that absences for jury duty are not comparable to absences for military service because jury duty is compulsory whereas military duties are voluntary. American's MSJ at 29–30, ECF No. 115. American further argues that the difference in duration between these two types of absences demonstrates that the absences are not comparable. As already noted, the average length of military absence from July 2012 through December 2018, was 23.2 days. American's MSJ App'x at 15–16. The average length of absence for jury duty during the same time period was 1.8 days. American's MSJ at 30, ECF No. 115. The longest military absence was 14.6 years (American's MSJ App'x at 15), whereas the longest absence for jury duty was 52 days (*Id.* at 16).

Hoefert responds that American's attempt to distinguish jury duty absences from military duty absences fails because the USSERA defines military service ("uniformed services") as "performance of duty on a voluntary or involuntary basis . . . ." Hoefert's MSJ Resp. at 29, ECF No. 119 (citing 38 U.S.C. § 4303(13)). Thus, Hoefert argues that it does not matter if jury duty is involuntary and military service is voluntary. *Id.*

While the Court agrees with Hoefert that the voluntariness of the allegedly comparable absence is not a controlling, the employee's ability to choose when to take the

absence is a factor to consider. *See* 20 C.F.R. § 1002.150(b) (providing "[i]n order to determine whether any two types of leave are comparable, . . . the ability of the employee to choose when to take the leave should . . . be considered"). Ultimately, the Court is persuaded that the differences in average duration render the two absences not comparable. Hoefert did respond to American's duration argument. As the implementing regulation provides, duration may be the most significant factor for courts to consider when determining comparability. *See* 20 C.F.R. § 1002.150(b). Thus, because the significant difference in durations, the Court finds that absences for jury duty are not comparable to absences for military service. *Moss*, 2019 WL 5892571, at *4 (granting summary judgment on section 4316(b) claim for jury duty because "regardless of whether this Court agrees that jury duty and military leave are analogously compulsory . . . there can be no reasonable dispute that jury duty service of [longer than 90 days] is highly unusual"). Accordingly, Hoefert is not entitled to benefits while on military leave that may accrue to American pilots absent while on leave for jury duty.

4. Vacation

American seeks summary judgment on the theory that vacation is not a "leave of absence" protected by section 4316(b) because under the applicable CBA, vacation is located in a different section than the section entitled, "Leaves of Absence." American's MSJ at 28, ECF No. 115; American's MSJ App'x at 27, 362. American underscores its argument by references a separate provision in the applicable CBA that is entitled, "Effect of Leaves on Vacations." *Id.*; American's MSJ App'x at 366. American also argues that

vacation absences are different than military absences because they have different purposes and durations. *Id.*

Hoefert does not respond to American's argument regarding vacation. Regardless, the Court finds that vacation absences are not comparable to military absences because the durations are so different. Under the applicable CBAs, the maximum amount of days that a pilot may be out for vacation is 31 days in a given year. *See* Jt. Stipulation at ¶ 13. On the other hand, from July 2012 through December 2018, 1,570 military absences lasted for one month or longer. American's MSJ App'x at 16.

Accordingly, Hoefert is not entitled to the benefits while he is absent for military service that pilots absent for vacation may accrue.

5. <u>FMLA Leave</u>

Finally, American contends that absences for FMLA are not protected by the USERRA because FMLA leave is statutorily mandated and not a "leave of absence under a contract agreement, policy, practice, or plan." 38 U.S.C. § 4316(b)(1)(B); American's MSJ at 25, ECF No. 115. American further contends that FMLA leave is not comparable to military absences because the average length of pilot military absence from July 2012 through December 2018 was approximately 23.2 days, with the longest absence being 14.6 years. American's MSJ App'x at 15. The average length of FMLA absences during the same period averaged 5.7 days and could not exceed 72 or 156 days. *See* 29 C.F.R. § 825.802(a). American's MSJ at 27, ECF No. 115. Hoefert responds that he does not contest the validity of FMLA, but instead argues that the issue is the benefits under the applicable CBAs. MSJ Resp. at 28, ECF No. 116.

Focusing on the difference in average durations between absences for military leave and absences for FMLA, as well as the difference in the longest absence for each, the Court concludes that the two types of absences are not comparable. Therefore, Hoefert is not entitled to the same benefits to pilots absent for family medical leave when he is absent for military service.

Having concluded that none of the other benefits Hoefert claims he was deprived of in violation of the USERRA concerned comparable absences, the Court **GRANTS** summary judgment on Hoefert's 38 U.S.C. § 4316(b) claim.

## CONCLUSION

For the foregoing reasons, the Court finds that Hoefert's Motion for Partial Summary Judgment (ECF No. 112) should be and is hereby **DENIED** and that American's Motion for Summary Judgment (ECF No. 115) should be and is hereby **GRANTED**. The Court **DISMISSES** Hoefert's claims **with prejudice.**

Accordingly, Hoefert's Motion for Class Certification (ECF No. 69) is **DENIED as moot**.

**SO ORDERED** on this **9th day** of **January, 2020**.


Mark T. Pittman
UNITED STATES DISTRICT JUDGE